**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **CHRISTOPHER HALETSKY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1391** |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Christopher Haletsky ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 18).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1974, has a high-school education, and previously worked as a desk consultant, car salesman, waiter, and cook. R. at 33, 44, 46, 202. Plaintiff applied for DIB and SSI protectively on September 14, 2010, alleging disability beginning on September 1, 2004 (later amended to April 1, 2009), due to a back injury. R. at 24, 47-48, 195-96, 201. The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 72-86, 89-98. On July 18, 2012, ALJ Larry K. Banks held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 39-71. On August 15, 2012, the ALJ issued a decision finding Plaintiff not disabled since the amended alleged onset date of disability of April 1, 2009. R. at 21-38. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on March 18, 2013. R. at 1-5, 13-20. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On May 11, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

A.   **Brian Y. Kim, D.O.**

The ALJ noted Dr. Kim's consultative examination of Plaintiff:

> A March 28, 2011, consultative examination report of Brian Y. Kim, DO, documents [Plaintiff's] ongoing symptoms including lower back pain and muscle spasm with radiating symptoms into the left leg and foot. [Plaintiff] reported difficulty with any prolonged sitting or standing more than 30 minutes, problems with stairs and unlevel surfaces, and restrictions in all aspects of his life including intimacy with his spouse. He further stated that he had difficulty sleeping due to pain, and experienced severe restrictions in mobility and range of motion, as well as muscle spasms in the morning. He listed his past medications including Darvocet, Percocet, Flexeril, Valium, Morphine, Neurontin and Prednisone.
>
> [Plaintiff] denied gait instability, balance difficulties, lower extremity giveaway weakness, or bowel retention or incontinence. He reported that he was 5'11", weighed 285 pounds, and smoked ½ pack of cigarettes per day. Physical examination revealed stable gait without any assistive device or compensation and intact neurological responses. He exhibited reduced range of motion in the cervical spine and the hips bilaterally, but his shoulders were within normal functional limits. Seated slump and straight leg raising was positive on the left at 75 degrees.

R. at 30-31 (citations omitted); *see* R. at 522-26.

B.   **State Agency Medical Consultants**

On April 25, 2011, S.K. Najar, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 527-35. Dr. Najar opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the left foot. R. at 528. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 529. Plaintiff had no manipulative, visual, communicative, or environmental limitations, however. R. at 530-31. Dr. Najar further stated:

>       Lives in apartment w/ family.  Pain hinders sleep.  Has difficulty getting dressed and bathing.  Prepares simple meals.  Washes dishes, vacuums, makes bed.  Cannot go out alone due to fear of falling down.  Shops once every two weeks.  Use[d] to wear a back brace, but does no longer fit him.
>
>       [Activities of daily living] credible.

R. at 532.  On August 22, 2011, another state agency medical consultant, Esther Pinder, M.D., affirmed Dr. Najar's opinion as written.  R. at 536-37.

C.     **Hearing Testimony**

   1.     **Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony:

>       [Plaintiff] is a 38-year-old man alleging symptoms and limitations arising from back disorders and obesity.  He states that these impairments result in severe back pain, discomfort, numbness, weakness, and collapsing episodes.  At the hearing, he testified that his pain travels across his hips, affects his upper back, and is constantly present in his left leg.  He stated that he experiences regular numbness in his left leg, as well as soreness and stiffness over the entire leg.  As for his obesity, [Plaintiff] testified that he was 5'11" and approximately 280 pounds at [the] hearing, which was 70 pounds heavier than on September 1, 2004, the date of his alleged injury.  He said that he tries to lose weight by eating salad.  He has been prescribed oral medications for diabetes, high cholesterol, and high blood pressure.
>
>       [Plaintiff] testified that he lives with his mother in a second-floor apartment with no elevator.  He is not currently working and has no current means of support besides his mother.  He said that he stopped working in 2004 due to a work-related back injury, and received workers' compensation benefits thereafter until February 2010.  At that point, his benefits claim settled for a lump sum payment of around $100,000.
>
>       As for his activities of daily living, [Plaintiff] testified that he lies down about 18 hours each day and stretches to relieve discomfort from his back condition.  He further testified that his mother can still prepare meals for him and take care of household chores, but she is blind in one eye from glaucoma and has shoulder problems.  [Plaintiff] said that he is very limited in his ability to perform household activities such that he can only wash a plate or two before experiencing severe pain.  He has collapsed and blacked out from the pain with the inability to move for a couple of hours.  He also said that he does not do any activities outside of the home because he is afraid to go out into public and collapse on someone.

>His sleep is limited to 2-3 hours at a time, frequently awakening to shift positions due to pain and discomfort.
>
>He testified that his impairments prevent him from sitting or standing more than 10-15 minutes at a time. He appeared in distress, shifted in his chair, and had to stand at the hearing due to severe pain in his left leg and lower back. He testified that his pain had persisted at all times since 2004.

R. at 28-29; *see* R. at 44-67.

**2.     VE Testimony**

According to the VE, Plaintiff's past work as a desk consultant is skilled and heavy,[2] his past work as a car salesman and restaurant waiter and cook is semi-skilled and light,[3] and his past work as a waiter and cook for a retirement home is semi-skilled and medium.[4] R. at 33, 67. In response to a series of questions regarding a hypothetical individual with Plaintiff's same age, education, and work experience who had various limitations, the VE testified that light jobs available to such a person included machine tender, grading and sorting worker, and ticket taker. R. at 68-69. Available sedentary jobs included security worker, small-parts inserter, and finish machine operator. R. at 69-70. A person could not perform any work if that person were limited to standing and walking for less than one hour, to sitting less than five hours, and to resting for two or more hours in an eight-hour workday. R. at 70. Such a person also could not perform any work if that person were "off task at least 20 percent of the workday" because of

---

[2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

"concentration and focus problems resulting from side effects of medication and pain." R. at 70-71.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below. *See infra* Part VI.

### III

### Summary of ALJ's Decision

On August 15, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of April 1, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a security worker, small-parts inserter, or finish machine operator. R. at 26-34. The ALJ accordingly found that he was not disabled from April 1, 2009, through the date of the decision. R. at 34.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he requires a sit/stand option (stand 20-30 minutes before alternating to sitting 20-30 minutes). He should do no climbing of ropes, ladders or scaffolds, and should avoid work around dangerous machinery or unprotected heights. He can perform stooping on an occasional basis. He should avoid the use of foot controls with the left lower extremity. Due to pain and side effects of medication, [Plaintiff] is limited to work requiring understanding and carrying out simple instructions, and may be off-task 5% of the workday.

R. at 28.[5]  The ALJ found that this RFC assessment was "supported by the opinions of the State agency consultants and the consultative examiner, the objective medical evidence of record, and [Plaintiff's] inconsistent allegations."  R. at 32.  In this regard, the ALJ considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 31.  The ALJ also weighed the opinion evidence in the record, giving "great weight" to the opinions of the state agency medical consultants and Dr. Kim.  R. at 32.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[7] ("SSR") 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 14-17, ECF No. 16-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 17. Specifically, Plaintiff contends that the ALJ erroneously relied on the opinions of the state agency medical consultants because the ALJ "actually rejected most of Dr. Najar's opinions," "failed to provide any explanation for his apparent rejection of these opinions," "failed to recognize that these physicians made no mention of . . . [Plaintiff's] recurrent herniated disc," "erroneously evaluated the opinions of the consultative examiner, Dr. Brian Y. Kim," and "failed to evaluate the opinions of [his] treating physician, Dr. John Stinson." *Id.* at 17-19. Plaintiff's assertions are without merit, as discussed below.

Plaintiff first maintains that the ALJ actually rejected Dr. Najar's opinion because the ALJ's RFC assessment relating to Plaintiff's exertional limitations was more restrictive than the

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

doctor's. Pl.'s Mem. Supp. Mot. Summ. J. 18, ECF No. 16-1. Although the ALJ stated that he afforded "greater weight" to Dr. Najar's opinion, the opinion was not entitled to "controlling weight" because it was an opinion by a non-treating source. *See Thomas v. Astrue*, Civil Action No. WGC-10-1528, 2011 WL 1557911, at *11 n.16 (D. Md. Apr. 21, 2011) (citing SSR 96-2p, 1996 WL 374188, at *2). Plaintiff's argument regarding the ALJ's "apparent rejection" of Dr. Najar's opinion accordingly is without merit.

Plaintiff further asserts that, "while Dr. Najar determined that [he] was limited to standing and walking for two hours in an eight-hour day, the [ALJ] determined that [he] was capable of standing and[/]or walking up to four hours in an eight-hour day." Pl.'s Mem. Supp. Mot. Summ. J. 18, ECF No. 16-1 (citation omitted). The ALJ found that Plaintiff required an option to stand for 20 to 30 minutes before alternating to sit for 20 to 30 minutes. R. at 28. Plaintiff contends that the ALJ thus determined that he was capable of standing and/or walking up to four hours in an eight-hour day because he "required the ability to change positions between sitting and standing every 20 to 30 minutes," which "equates to an ability to stand up to four hours in an eight-hour day" and is, therefore, inconsistent with Dr. Najar's opinion. Pl.'s Mem. Supp. Mot. Summ. J. 18 & n.1, ECF No. 16-1. Even if Plaintiff's argument were correct, Dr. Najar opined that Plaintiff was capable of standing and/or walking for a total of *at least* two hours in an eight-hour workday. R. at 528. Determining that Plaintiff had the capacity to do so for up to four hours in an eight-hour workday thus would not be inconsistent with Dr. Najar's opinion.

In any event, jobs are sedentary if walking and standing are required occasionally. 20 C.F.R. §§ 404.1567(a), 416.967(a). "Occasionally" "means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."

SSR 96-9p, 1996 WL 374185, at *3. The ALJ's RFC assessment limiting Plaintiff to less than the full range of sedentary work accordingly was consistent with Dr. Najar's opinion regarding Plaintiff's ability to stand and walk for at least two hours in an eight-hour workday.

Plaintiff next points out that the ALJ determined that he was limited to occasional stooping (R. at 28), although Dr. Najar also limited Plaintiff to only occasional balancing, kneeling, crouching, crawling, and climbing of ramps and stairs (R. at 529). "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at *7. Further, "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id.* at *8; *see* SSR 85-15, 1985 WL 56857, at *6-7 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . . [L]imitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees)."); SSR 83-14, 1983 WL 31254, at *2 ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . . [T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)."), *4-5 (certain non-exertional limitations, including but not limited to the "inability to ascend or descend scaffolding, poles, and ropes" do not significantly

affect the ability to perform work). Furthermore, the jobs of security worker (surveillance-system monitor), small-parts inserter (buckle-wire inserter), and finish machine operator (umbrella tipper) do not require more than what was opined by Dr. Najar. Def.'s Mem. Supp. Mot. Supp. J. 11, ECF No. 18-1 (citing *Dictionary of Occupational Titles*). Thus, even if the ALJ had included in his RFC assessment the postural limitations as opined by the state agency medical consultant, "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009).

Plaintiff next argues that Dr. Najar determined that his complaints were credible (R. at 532), while the ALJ found that he was not credible. Dr. Najar found, however, that Plaintiff's reported activities of daily living were credible (R. at 532), while the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. R. at 31. Plaintiff does not dispute the ALJ's determination that Plaintiff's testimony regarding his injuries (R. at 31) was inconsistent and that Plaintiff's "exhibition of acute distress and discomfort during the hearing were [sic] also inconsistent with medical evidence of record stating that he did not appear to be in acute distress" (R. at 32). Because an ALJ's findings regarding a claimant's credibility are entitled to great weight, Plaintiff's argument thus is unavailing. *See Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.").

Plaintiff's contention that "the State Agency physicians were not aware of, or deliberately ignored, [his] recurrent herniated disc" likewise is without merit. Pl.'s Mem. Supp. Mot. Summ.

J. 19, ECF No. 16-1 (citing R. at 417-18, 476). Rather, Dr. Najar's opinion referred to a July 2009 treatment note noting an MRI from the previous year indicating post-operative changes at L5-S1 (R. at 452, 534), which the ALJ also reviewed in his decision (R. at 29-30, 515).

Plaintiff further maintains that the ALJ erroneously evaluated the opinion of Dr. Kim, the consultative examiner, because the ALJ failed to include any of Dr. Kim's restrictions, even though the ALJ gave great weight to his opinion. Pl.'s Mem. Supp. Mot. Summ. J. 19, ECF No. 16-1. Dr. Kim opined that Plaintiff could tolerate sitting up to 45 to 60 minutes at a time and walking up to 30 minutes per hour; thus, Dr. Kim recommended frequent postural changes. R. at 525. The ALJ found that Dr. Najar's opinion was consistent with Dr. Kim's opinion that Plaintiff could stand up to 30 minutes per hour and lift or carry objects up to 25 pounds. R. at 32, 525. In determining his RFC, the ALJ limited Plaintiff to sedentary work with an option to alternate between sitting and standing every 20 to 30 minutes. R. at 28. Plaintiff's contention regarding an inconsistency between the ALJ's RFC assessment and Dr. Kim's opinion accordingly is without merit.

Plaintiff next asserts that the ALJ failed to evaluate the opinion of Dr. Stinson, his treating physician, that he was incapable of working. Pl.'s Mem. Supp. Mot. Summ. J. 19-20, ECF No. 16-1 (citing R. at 438, 447, 517, 519). He further contends that the ALJ erred in failing to articulate the reasons for affording less weight to a treating physician's opinion and in failing to consider certain factors when weighing such an opinion. *Id.* at 20-24.

"[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Moreover, the burden is on the party attacking an

agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))). Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bautista v. Astrue*, Civil No. TJS-11-1651, 2013 WL 664999, at *6 (D. Md. Feb. 22, 2013).

Here, Dr. Stinson's opinion regarding Plaintiff's inability to work was not a medical opinion, but an opinion on an issue reserved to the Commissioner and thus not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (per curiam) ("Rather than providing a reasoned explanation, [the treating physician] simply opined in his conclusory fashion that [the claimant] was 'permanently and totally disabled' and 'will never be able to perform substantial gainful

work activity.'  Thus, [the treating physician's] letter more closely resembled an opinion on a matter reserved to the Commissioner than a medical opinion.").  Dr. Stinson's opinion on Plaintiff's inability to work also appears to be based on Plaintiff's self-reporting (R. at 420, 421). *See Craig*, 76 F.3d at 590 (noting that conclusory medical opinion based on claimant's subjective reports and unsupported by opining physician's own notes was unpersuasive).  Accordingly, the ALJ was not required to give controlling weight to Dr. Stinson's opinion on the ultimate issue of disability.  *See Ray v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-2397, 2012 WL 2860875, at *3 (D. Md. July 9, 2012).  Because Plaintiff's claimed errors regarding the ALJ's discussion of Dr. Stinson's opinion have no practical effect on the outcome of this case, remand is not warranted.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.  The Commissioner's decision is **AFFIRMED**.  A separate order shall issue.

Date: September 5, 2014                                             /s/
                                                                                Thomas M. DiGirolamo
                                                                                United States Magistrate Judge